FILED
JAMES BONINI
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

2010 JUN 23 P 3: 27

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
COLUMBUS

UNITED STATES OF AMERICA

No. 2:10-cr-45

vs.

JUDGE MARBLEY

LINDA L. CASE,

Defendant.

**UNITED STATES' SENTENCING MEMORANDUM
AND MOTION FOR DOWNWARD DEPARTURE
AND MOTION FOR UNSEALING**

The United States of America, by and through the undersigned counsel, in the above entitled case herein submits this Sentencing Memorandum, Motion for Downward Departure and Motion for Unsealing.

**I.  SENTENCING MEMORANDUM**

The Presentence Investigation Report (PSR) has correctly calculated the sentencing range under the United States Sentencing Guidelines (the "Guidelines") as 15 to 21 months imprisonment given an Offense Level 14 and a Criminal History Category I. The PSR further recommends a deviation from the Guidelines to 5 months imprisonment, and other conditions including 5 months of home detention, based upon the factors delineated in 18 U.S.C. 3553(a).

The Government does not concur with the deviation but nonetheless asserts that a downward departure from the Guidelines range is appropriate pursuant to §5K1.1 as a result of substantial assistance provided by Defendant to authorities. Accordingly, the Government

1

recommends a 1/3 downward departure from the Guidelines's recommended sentence of 15 to 21 months imprisonment to 10 to 14 months imprisonment for the reasons set forth below.

Defendant has several objections as noted in her April 21, 2010 response to the initial PSR. The final PSR adequately addresses each of Defendant's objections and there are no unresolved objections.

### A. SENTENCING PROCEDURES

As this Court is well-aware, according to *Booker v. United States*, district courts should engage in a three-step sentencing procedure. 543 U.S. 220 (2005). First, the Court must determine the applicable Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." Second, the Court must consider whether a departure from that Guidelines range is appropriate. Third, the Court must consider the applicable Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose.

*Booker* ultimately requires that the district court provide a reasonable sentence. *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005) (citing *Booker*, 543 U.S. at 260). Both procedural and substantive reasonableness are essential. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). The Court must additionally "provide a reasoned explanation for its choice of sentence and its explanation must be sufficiently thorough to permit meaningful appellate review." *United States v. Blackwell*, 459 F.3d 739, 773 (6th Cir. 2006). In determining substantive reasonableness in particular, the circuit court assesses whether the sentence length is reasonable in light of the section 3553 factors. *United States v. Yopp*, 453 F.3d 770, 774 (6th

Cir. 2006).

The Government submits this filing in support of, and incorporating by reference, the PSR and Guidelines calculations. The Government first discusses the Defendant's sentence according to the Guidelines. Next the Government discusses the Court's consideration of the 18 U.S.C. § 3553(a) factors of the Sentencing Reform Act ("3553(a) factors") and the "reasonableness" of the sentence. Finally, the Government advocates a downward departure from the Guidelines range of imprisonment pursuant to §5K1.1. Based upon Defendant's conduct and criminal culpability, the Government requests a sentence of 10 to 14 months imprisonment.

### B. UNITED STATES SENTENCING GUIDELINES

The government agrees with the sentencing calculation proposed in the PSR. The Total Offense Level for Defendant is 14 with a Criminal History Category of I. Accordingly, the Guidelines sets the offense in Zone D of the Sentencing Table at 15 to 21 months imprisonment.

### C. SECTION 3553(a) FACTORS

The factors set forth in 18 U.S.C. 3553(a) must be considered in imposing a sentence in addition to the Guidelines. The PSR asserts that the factors contained within 3553(a) call for a deviation from the Guidelines's imprisonment range of 15 to 21 months imprisonment to imprisonment for 5 months and other conditions.

Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That subparagraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law,

>  and to provide just punishment for the offense;
>
>  (B) to afford adequate deterrence to criminal conduct;
>
>  (C) to protect the public from further crimes of the defendant; and
>
>  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. 3553(a). That section further directs the Court – in determining the particular sentence to impose – to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. Id.

After *Booker*, a defendant may argue those mitigating characteristics about herself, her family, her life's work and intentions, or the facts of her case that were previously forbidden from consideration by a strict interpretation of the Guidelines. 18 U.S.C. § 3553(a)(1). Recognizing that Defendant will make further arguments at the time of sentencing, the Government will respond to such arguments, if needed, at that time.

The Government requests a sentence that comports with the central command of 3553(a): one that is "sufficient, but not greater than necessary, to comply with the purposes" of punishment. The following discussion demonstrates that section 3553(a) demands a within-Guidelines sentence.

    1.    <u>Nature and Circumstances of the Offense</u>

The PSR accurately states the offense conduct involving obstructive behavior and false

4

statements to authorities under 18 U.S.C. 1001 (PSR 2-5).

As this Court is aware, the bail-jumping investigation revealed that in September 2008, Defendant Case provided instructions on how to contact fugitive Rebecca Parrett to attorney David Riehl of Brunswick Ohio. These instructions included the existence of a "secret" e-mail address, which between September and November 2008, was used for communications between Case, Parrett and Reihl. Reihl stopped communicating with Case and Parrett using this e-mail account sometime in November 2008. However, Case and Parrett continued communicating over the same e-mail account until Case's arrest on February 12, 2010. The USMS obtained authorization for the interception of electronic communications occurring over the e-mail account. Twenty-two (22) communications were intercepted between August 30, 2009 and February 10, 2010. February 10th was the date of the last e-mail interception before Case's arrest on February 12th. The content of e-mail system communications revealed:

    a.     Case, located in Ohio, and Parrett, located in Mexico, regularly communicated using an e-mail system employing code words and phrases and a method of e-mail communication to avoid use of internet service provider servers, all in an effort to avoid detection;

    b.     Case was aware that Parrett was residing in the country of Mexico as a fugitive;

    c.     Case provided Parrett with news and information regarding the USMS investigation and with information regarding the probability that broadcast news shows may televise a story about Parrett, Parrett's fraud conviction and subsequent flight, all in an effort to assist Parrett conceal her location and identity;

    d.     Case provided false information as to Parrett's condition and location to law

        enforcement and others, including close relatives of Parrett, in an effort to assist Parrett in concealing her location and condition;

e.    While Case discussed plans to move to Mexico for quite sometime, Case had plans for a face-to-face meeting in Mexico with her fugitive sister sometime this year.

All of the above concealed activities of Defendant Case - misinformation provided to law enforcement by CASE and repeated denials by CASE as to her knowledge of the location of Parrett - were material facts which, if known, would have significantly assisted the USMS in the bail-jump investigation. In sum, Case attempted to misdirect the investigation, provided valuable information to Parrett, and had plans to join Parrett in Mexico.

        2.    <u>History and Characteristics of the Defendant</u>

The PSR accurately sets forth the defendant's criminal history and characteristics in Parts B and C. (PSR at 8-12). The justification for a deviation from the Guideline range of imprisonment stems primarily from these factors. The PSR explains the recommended deviation in a section entitled "Justification," focusing on Defendant's contriteness, criminal history, and stress as characteristics that in conjunction with one another merit 5 months imprisonment instead of the 15 to 21 months recommended by the Guidelines.

The PSR notes that Defendant explained she maintained communication with Parrett "to reassure her mother that Parrett was doing alright." While this may explain why Defendant communicated with Parrett, it does not explain her deceptive use of draft e-mails on a joint account to effect that communication. Case's lies to authorities about such communications were not necessary if her only intent was to reassure her mother that Parrett was alive and well. Apart

from a concern for her mother, Defendant chose to work with Parrett for both Parrett's benefit and her own as noted above.

The PSR also accounts for Defendant's lack of criminal history in arising at its significant deviation from the Guidelines's sentencing recommendation. The Guidelines, however, already account for Defendant's lack of criminal history. Under the Guidelines, Defendant is sentenced to the lowest imprisonment range possible for an individual convicted of similar conduct because of her Criminal History Categorization of I.

Finally, the PSR lists the stress in Defendant's life that, in conjunction with the aforementioned factors, merit a substantial deviation from the Guidelines. While Defendant undoubtedly experienced a period of stress in 2002 when within a short period both her brother died and her sister's company, NCFE, collapsed under the weigh of fraud, the behavior constituting the offense here commenced much later in 2008. The declining health of Defendant's mother has also undoubtedly created stress, but no more so than similar situated persons of Case's age with living parents.

        3.     Statutory Purposes of 3553(a)

              a.     To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

Defendant repeatedly misled officers from the United States Marshal Service (USMS) in their efforts to apprehend a fugitive, Defendant's sister, Rebecca Parrett. Parrett was convicted for her role in the fraud perpetrated by National Century Finance Enterprises (NCFE). Upon release pending sentencing, Parrett fled and failed to report for sentencing. Parrett was sentenced *in absentia* to 25 years imprisonment in March 2009, one year after Case's first contact with law

7

enforcement and about one year before Case's arrest.

Between March 28, 2008, and January 25, 2010, Defendant was interviewed by the USMS regarding Parrett's disappearance on six occasions. Defendant lied to the USMS throughout the interviews despite repeated instructions that such actions were criminal. Defendant denied having had contact with Parrett since Parrett's disappearance and denied having information regarding Parrett's location. Furthermore, Defendant provided false information to the USMS regarding Parrett's location, stating that Parrett might be located in Nicaragua or Costa Rica when in fact she knew Parrett to be somewhere in Mexico. Finally, Defendant provided Parrett with information to help Parrett evade authorities, such as the contents of Defendant's USMS interviews and updates of media coverage pertaining to Parrett's disappearance.

Defendant knew Parrett was sentenced to a term of 25 years for her conviction in the NCFE fraud and that other defendants convicted in the same fraud were serving significant prison terms yet. Authorities did not uncover the methods by which Defendant communicated with Parrett until more than a year after USMS began interviewing Defendant. Throughout her contact with the USMS, Defendant was making plans to meet Parrett in Mexico. Thus, the offense was a an overt attempt to derail the investigation to ensure the plans of Parrett, and her own plans, in the future.

It should be noted that on May 3, 2010, at a detention hearing before this Court, Defendant Case attempted to claim that she did not know Parrett was located in the country of Mexico. (RT pp. 15-16) This may be considered a continuation of Case's campaign of disinformation.

8

Notwithstanding the severity of the deception alone, the fact that Parrett is still at-large highlights the impact of Defendant's false statements. Significant and unnecessary investigatory efforts and resources were spent as a result of Defendant's deception. Not only were the authorities misled regarding Parrett's whereabouts but they were also compelled to expend significant investigatory resources on the regular communications between Defendant and Parrett.

The Guideline range accurately reflects the seriousness of this multipurpose offense and promotes respect for the law. Defendant was not simply defiant to authorities. Defendant sought to mislead authorities in an attempt to secure her sister's continued flight and to bolster her own unlawful conduct. Respect for the law is implicated in the most direct sense in the offense of making false statements to authorities, and a within-Guidelines sentence reflects this fact.

       b.  To Afford Adequate Deterrence to Criminal Conduct

Another of the factors the Court must consider in imposing a sentence under § 3553(a) is the need for the sentence to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). A within-Guidelines sentence is necessary for both the deterrence of this defendant and others who may consider lying to authorities. Particularly important is the message Defendant's punishment sends to would-be perpetrators. Given the high profile of the NCFE case and Parrett's flight from justice, a within-Guideline sentence is appropriate.

**D. KINDS OF SENTENCES AVAILABLE AND UPWARD DEPARTURE**

The PSR accurately notes the statutory maximum penalty: 5 years imprisonment, $250,000 fine, 3 years supervised release, and $100 special assessment.

While the Government does not ask for an upward departure in this case, such a sentence

is appropriate for consideration by the Court.

A upward departure from the Guidelines may be warranted under U.S.S.G. § 5K2.0(a)(3):

A departure may be warranted in an exceptional case, even though the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range, if the court determines that such circumstance is present in the offense to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of offense.

The introduction to the Sentencing Guidelines pt. A(1), n. 4(b) states:

The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.
An upward departure also may be warranted under U.S.S.G. § 5K2.7 (Disruption of

Governmental Function):

If the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected. Departure from the guidelines ordinarily would *not be justified when the offense of conviction is an offense such as* bribery or *obstruction of justice*; in such cases interference with a governmental function is *inherent in the offense*, and *unless the circumstances are unusual the guidelines will reflect the appropriate punishment* for such interference.

(emphasis added).

In United States v. O'Georgia, 569 F.3d 281 (6th Cir. 2009), the Court found with regard to § 5K2.7 that "the caselaw supports the proposition that such a departure is appropriate where the *harm* is greater than usual for the initial government-interfering offense." 569 F.3d at 293. In support, the Court cited United States v. Heckman, 30 F.3d 738, 743 (6th Cir. 1994) (affirming a § 5K2.7 departure for a defendant who not only tried to evade payment of his own taxes but also used the IRS to harass numerous other persons) and United States v. Garcia, 900

10

F.2d 45, 49 (5th Cir.1990) (affirming a § 5K2.7 departure for a defendant convicted of mail theft because the scale of the operation caused an unusually serious disruption of the mail). However, the Court found that applying § 5K2.7 was in error in O'Georgia because the defendant's conduct (misleading two physicians about his background and circumstances and using letters from them to avoid being sentenced) was adequately accounted for by the underlying Guideline.

### E. SENTENCING RANGE

Again, the PSR sets forth a Guidelines range of 15 to 21 months imprisonment. The PSR recommends a sentence of 5 months imprisonment and 2 years of supervised release which would include 5 months of home confinement with electronic monitoring.

### F. NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES

A within-Guidelines sentence will avoid unwarranted sentence disparities.

### G. RESTITUTION

The only identifiable victim in this case is the USMS. Given the personal financial state of Defendant as described in the PSR, restitution is not necessary. (PSR 11-12)

## II. DEFENDANT'S SUBSTANTIAL ASSISTANCE MERITS A DOWNWARD DEPARTURE.

Defendant qualifies for a downward departure pursuant to U.S.S.G. § 5K1.1 for substantial assistance she provided to authorities after her arrest to apprehend her fugitive sister, Rebecca Parrett. Defendant confirmed that Parrett fled to Mexico, describing both the circumstances of Parrett's flight and that Parrett had contact with her husband, Gary Green. Authorities corroborated the information provided by Defendant. In sum, as a result of the information Defendant provided, the USMS is no longer following false leads and can pursue Parrett with accurate and useful information.

The PSR calculated the Guidelines's range at 15 to 21 months given Defendant's Offense Level 14 and her Criminal History Category I. Based upon the above assistance, a downward departure of 1/3 of Defendant's sentence is appropriate. Thus, a reasonable sentence would be between 10 and 14 months imprisonment.

## III. MOTION FOR UNSEALING

Matters have been sealed in this case due to the nature of the ongoing investigation into the location and condition of fugitive Rebecca Parrett. However, such investigation has reached a point were sealing is no longer necessary. The Government now moves for unsealing without objection by the Defendant.

## IV. CONCLUSION

The Government respectfully submits that, for the reasons explained above, a within-Guideline sentence between 10 and 14 months imprisonment is reasonable and appropriate. The Government further requests any previously sealed matters be unsealed.

Respectfully submitted,

CARTER M. STEWART
United States Attorney

DOUGLAS W. SQUIRES (0073524)
Assistant United States Attorney
303 Marconi Boulevard; Suite 200
Columbus, Ohio 43215
(614) 469-5715
Fax: (614) 469-5653
Douglas.Squires @usdoj.gov

13

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by regular mail this 23 day of June 2010, on opposing counsel.

                                             /s/ Douglas W. Squires
                                             DOUGLAS W. SQUIRES (0073524)
                                             Assistant United States Attorney